# IN THE UNITED STATES COURT OF APPEALS
## FOR THE THIRD CIRCUIT

Mahmoud KHALIL,

*Petitioner–Appellee,*

Donald J. TRUMP, in his official capacity as President of the United States; William P. JOYCE, in his official capacity as Acting Field Office Director of New York, Immigration and Customs Enforcement; Yolanda PITTMAN, in her official capacity as Warden of Elizabeth Contract Detention Facility; Todd LYONS, in his official capacity as Acting Director of Immigration and Customs Enforcement; Kristi NOEM, in her official capacity as Secretary of the Department of Homeland Security; Marco RUBIO, in his official capacity as Secretary of State; and Pamela BONDI, in her official capacity as Attorney General of the Department of Justice,

*Respondents–Appellants.*

## OPPOSITION TO PETITION FOR PERMISSION TO APPEAL AN INTERLOCUTORY ORDER OF THE U.S. DISTRICT COURT FOR THE DISTRICT OF NEW JERSEY PURSUANT TO 28 U.S.C. § 1292(b)

AMERICAN CIVIL LIBERTIES UNION OF
NEW JERSEY FOUNDATION
Jeanne LoCicero
Farrin R. Anello
Molly K.C. Linhorst
Liza Weisberg
570 Broad Street, 11th Floor
Newark, New Jersey 07102

CENTER FOR CONSTITUTIONAL RIGHTS
Baher Azmy
Samah Sisay
Diala Shamas
666 Broadway, 7th Floor
New York, NY 10012
Tel: (212) 614-6464

Tel: (973) 854-1715

NEW YORK CIVIL LIBERTIES UNION
FOUNDATION
Amy Belsher
Robert Hodgson
Veronica Salama
Molly Biklen
125 Broad Street, 19th Floor
New York, N.Y. 10004
Tel: (212) 607-3300

AMERICAN CIVIL LIBERTIES UNION
FOUNDATION
Omar Jadwat
Noor Zafar
Sidra Mahfooz
Brian Hauss
Esha Bhandari
Vera Eidelman
Tyler Takemoto
Brett Max Kaufman
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2500

CLEAR PROJECT
MAIN STREET LEGAL SERVICES, INC.
Ramzi Kassem
Naz Ahmad
Mudassar Hayat Toppa
Shezza Abboushi Dallal
CUNY School of Law
2 Court Square
Long Island City, NY 11101
Tel: (718) 340-4558

WASHINGTON SQUARE LEGAL SERVICES,
INC.
Alina Das
Immigrant Rights Clinic
245 Sullivan Street, 5th Floor
New York, New York 10012
Tel: (212) 998-6430

DRATEL & LEWIS
Amy E. Greer
29 Broadway, Suite 1412
New York, NY 10006
Tel: (212) 732-8805

VAN DER HOUT LLP
Marc Van Der Hout
Johnny Sinodis
Oona Cahill
360 Post St., Suite 800
San Francisco, CA 94108
Tel: (415) 981-3000

*Counsel for Petitioner–Appellee*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ................................................................................ ii

INTRODUCTION .......................................................................................... 1

FACTUAL BACKGROUND ............................................................................ 3

PROCEDURAL HISTORY .............................................................................. 6

REASONS WHY THE PETITION SHOULD BE DENIED ............................... 12

    I.  The government identifies no "substantial ground for
          difference of opinion" on the district court's habeas
          jurisdiction..................................................................................... 13

    II. An interlocutory appeal will not materially advance the
          ultimate termination of the litigation or serve the purposes of
          section 1292(b)'s exception to the final judgment rule................. 21

CONCLUSION.............................................................................................. 23

# TABLE OF AUTHORITIES

## Cases

*Ahrenholz v. B. of Trs. of Univ. of Ill.*,
   219 F.3d 674 (7th Cir. 2000) ................................................................. 21

*Anariba v. Dir. Hudson Cnty. Corr. Ctr.*,
   17 F.4th 434 (3d Cir. 2021) ............................................................. 10, 17

*Bachowski v. Usery*,
   545 F.2d 363 (3d Cir. 1976) ....................................................... 11, 12, 21

*Barna v. Bd. of Sch. Dirs.*,
   877 F.3d 136 (3d Cir. 2017) ................................................................. 14

*Boumediene v. Bush*,
   553 U.S. 723 (2008) ............................................................... 17, 19, 20

*Bush v. Adams*,
   629 F. Supp. 2d 468 (E.D. Pa. 2009) ..................................................... 13

*Campbell v. Off. of Pers. Mgmt.*,
   694 F.2d 305 (3d Cir. 1982) ................................................................. 15

*Christian v. Hawk*,
   923 F.2d 200 (D.C. Cir. 1990) .............................................................. 14

*Cobell v. Norton*,
   226 F. Supp. 2d 1 (D.D.C. 2002) .......................................................... 21

*Cobell v. Norton*,
   334 F.3d 1128 (D.C. Cir. 2003) ........................................................... 21

*Couch v. Telescope Inc.*,
   611 F.3d 629 (9th Cir. 2010) ............................................................... 13

*Cruz-Aguilera v. INS*,
   245 F.3d 1070 (9th Cir. 2001) .............................................................. 14

*Demjanjuk v. Meese*,
  784 F.2d 1114 (D.C. Cir. 1986) ............................................................. 10

*Dragenice v. Ridge*,
  389 F.3d 92 (4th Cir. 2004)................................................................... 14

*Ex parte Catanzaro*,
  138 F.2d 100 (3d Cir. 1943) ............................................................ 10, 17

*Ex parte Endo*,
  323 U.S. 283 (1944) ................................................................... 9, 13, 17

*Fechter v. Connecticut Gen. Life Ins. Co.*,
  800 F. Supp. 178 (E.D. Pa. 1991) .......................................................... 13

*FTC v. Wyndham Worldwide Corp.*,
  10 F. Supp. 3d 602 (D.N.J. 2014) .......................................................... 21

*Katz v. Carte Blanche Corp.*,
  496 F.2d 747 (3d Cir. 1974) ............................................................ 12, 20

*Khalil v. Joyce*,
  No. 25-CV-1935, 2025 WL 849803 (S.D.N.Y. Mar. 19, 2025) ....... 1, 2, 6, 8

*Lafferty v. St. Riel*,
  495 F.3d 72 (3d Cir. 2007) ................................................................... 16

*Liriano v. United States*,
  95 F.3d 119 (2d Cir. 1996) ................................................................... 14

*Maxlite, Inc. v. ATG Elecs., Inc.*,
  2017 WL 215970 (D.N.J. Jan. 17, 2017) ............................................... 12

*Mazzella v. Stineman*,
  472 F. Supp. 432 (E.D. Pa. 1979) .......................................................... 21

*Milbert v. Bison Lab'ys, Inc.*,
  260 F.2d 431 (3d Cir. 1958) ................................................................. 12

*Mohawk Indus., Inc. v. Carpenter,*
 558 U.S. 100 (2009) .......................................................... 11

*Monteiro v. Att'y Gen. of U.S.,*
 261 F. App'x 368 (3d Cir. 2008) ........................................ 15

*Ozturk v. Trump,*
 No. 25-CV-10695, 2025 WL 1009445 (D. Mass. Apr. 4, 2025)..... 2, 14, 16

*Ozturk v. Trump,*
 No. 25-CV-374, 2025 WL 1145250 (D. Vt. Apr. 18, 2025) ..... 2, 14, 16, 18

*Partee v. Att'y Gen.,*
 451 F. App'x 856 (11th Cir. 2012) .................................... 14

*Phillips v. Seiter,*
 173 F.3d 609 (7th Cir. 1999) ............................................ 14

*Robinson v. Johnson,*
 313 F.3d 128 (3d Cir. 2002) ............................................. 14

*Roman v. Ashcroft,*
 340 F.3d 314 (6th Cir. 2003) ........................................... 14

*Rumsfeld v. Padilla,*
 542 U.S. 426 (2004) .............................................. passim

*Schell v. Vaughn,*
 549 F. App'x 788 (10th Cir. 2013) ................................... 14

*Singleton v. Wulff,*
 428 U.S. 106 (1976) ...................................................... 14

*Storey v. Lumpkin,*
 8 F.4th 382 (5th Cir. 2021) ............................................. 14

*Sun Life Assurance Co. of Canada v. Wells Fargo Bank, N.A.,*
 21-cv-9959, 2023 WL 3309355 (D.N.J. May 8, 2023) ............ 20

**Statutes**

28 U.S.C. § 1291 ........................................................................................ 11

28 U.S.C. § 1292 ............................................................................... 3, 12, 14

28 U.S.C. § 1406 .......................................................................................... 9

28 U.S.C. § 1631 ................................................................................ 7, 8, 13, 16

28 U.S.C. § 1651 .......................................................................................... 6

28 U.S.C. § 2241 ........................................................................................ 15

28 U.S.C. § 2242 ........................................................................................ 16

**Other Authorities**

16 Wright & Miller, Fed. Prac. & Proc. Juris. § 3930 (3d ed.) ..................... 13

2 Fed. Proc., L. Ed. § 3:217 ......................................................................... 13

ACLU (@aclu_nationwide), Instagram, https://www.instagram.com/
   reel/DHMYHAxRsK1 ............................................................................. 4

*Discretionary Appeals of District Court Interlocutory Orders*, 69 Yale L.J.
   333 (1959) ........................................................................................... 20

**Rules**

Fed. R. Civ. P. 15 ........................................................................................ 18

## INTRODUCTION

Six weeks ago, government agents arrested Mahmoud Khalil, a lawful permanent resident, inside his apartment building in Manhattan, and in front of his wife, who was then eight months pregnant with their first child. The arresting officers initially claimed they were acting based on the revocation of Mr. Khalil's student visa, but even after his wife furnished his green card, they proceeded to detain him anyway, and then "haul[]" him, "in the space of less than twenty-four hours, . . . through at least six different districts (one likely twice)." *Khalil v. Joyce (Khalil S.D.N.Y.)*, No. 25-CV-1935, 2025 WL 849803, at *11 n.6 (S.D.N.Y. Mar. 19, 2025). Within hours of Mr. Khalil's detention—which the government announced from the start is meant to punish him for his political speech—his lawyers filed a habeas petition on his behalf in the Southern District of New York, based on information about his location that was "affirmatively supplied" by the government, Add.51. But in fact, at the time of filing, Mr. Khalil was being held in New Jersey. And shortly after the filing, the government sent Mr. Khalil to Louisiana, where he remains in custody today.

Instead of justifying what it has done to Mr. Khalil, the government has maintained that he keeps seeking relief in the wrong place. But two district

1

courts have concluded that his habeas petition belongs in the District of New Jersey—the place of his detention when he filed the petition under the long-standing immediate custodian and district of confinement rules—and that the government's arguments to the contrary are wrong.[1] And two other district courts have rejected the same arguments in a separate, ongoing habeas case.[2] Meanwhile, Mr. Khalil's urgent claims, including for release from his detention undertaken in plain violation of the First Amendment and due process, remain pending below.

The government seeks immediate review under 28 U.S.C. § 1292(b), hoping to quickly obtain a jurisdictional rule that accommodates its preference to move individuals around at will. That is an argument the government will be free to make in this Court, like any other litigant, after final judgment. But, given the powerful policy interests reflected in the final judgment rule, the government cannot meet the exacting standards regulating interlocutory appeals. While it is true that the district court's opinion decides an important question of law, it neither disturbs any federal

---

[1] Add.27–69; *Khalil S.D.N.Y*, 2025 WL 849803, at *11–14.

[2] *Ozturk v. Trump (Ozturk Vt.)*, No. 25-CV-374, 2025 WL 1145250, at *5–10 (D. Vt. Apr. 18, 2025); *Ozturk v. Trump (Ozturk Mass.)*, No. 25-CV-10695, 2025 WL 1009445, at *4–11 (D. Mass. Apr. 4, 2025).

policy nor binds the government in any other case. And the government presents no reasonable ground to disagree with the district court's conclusion. Ultimately, it fails to offer any serious argument that an interlocutory appeal at this advanced stage of the litigation—six weeks into a detention Mr. Khalil is challenging as manifestly unconstitutional, with multiple pending motions for substantive relief—would serve the purposes of section 1292(b).

At this point, there is no reason for this Court, against the grain of the fundamental judicial policy to avoid piecemeal appeals, to review the district court's decision—especially when additional issues arising from the ongoing (and fast-moving) proceedings below are likely to reach this Court in short order. And here, any delays, even without a stay of proceedings, that might result from the adjudication of a piecemeal appeal would heavily prejudice Mr. Khalil, who remains in custody, and whose pending claims for return to New Jersey and release have become all the more urgent with the birth, days ago, of his son.

The Court should reject the government's petition.

<u>FACTUAL BACKGROUND</u>

At approximately 8:30 on the night of March 8, 2025, Mr. Khalil and his wife were returning to their home near Columbia University's campus in

Manhattan after attending an Iftar dinner, which is a meal eaten at sunset to break the daylong fast Muslims observe during the holy month of Ramadan. Am. Pet. ¶ 45 (ECF 38).[3] To their shock, plainclothes agents from the Department of Homeland Security—seemingly unaware of his lawful permanent resident (i.e., green card holder) status—took him into custody. *Id.* ¶¶ 46–47.[4] The agents brought Mr. Khalil to 26 Federal Plaza, the location of the Immigration and Customs Enforcement ("ICE") New York Field Office. *Id.* ¶ 58.

Immediately recognizing that Mr. Khalil's arrest, detention, and threatened deportation were unlawful, Mr. Khalil's lawyers raced to draft a habeas petition on his behalf. One of them checked the ICE online detainee locator multiple times to confirm his location, including just before filing. *Id.* ¶ 54. From 10 o'clock that night until around 8 o'clock the next morning, the locator showed that Mr. Khalil was in custody in New York City. *Id.* ¶¶ 54–55.

While Mr. Khalil was being held at 26 Federal Plaza, White House officials were in contact with the ICE agents who were processing him. *Id.*

---

[3] All ECF numbers reference the district court docket.

[4] Mr. Khalil's wife captured the latter part of the arrest on video. ACLU (@aclu_nationwide), Instagram, https://www.instagram.com/reel/DHMYHAxRsK1.

¶ 58. The agents presented him with a Notice to Appear ("NTA") indicating he had already been assigned an immigration court date, several weeks out, in Louisiana. *Id.* ¶¶ 59–60. And they refused his request to speak with his attorney. *Id.* ¶¶ 59.

At some point overnight, ICE agents transported Mr. Khalil to Elizabeth Detention Center ("EDC") in New Jersey. *Id.* ¶ 61. Upon arrival at EDC, and then again the next morning, Mr. Khalil requested to speak with his lawyer, and was twice refused. *Id.* ¶ 62; Khalil Decl. ¶¶ 9, 12 (ECF 73-1).

Meanwhile, Mr. Khalil's attorneys continued to work on his habeas petition. At 4:40 a.m. on March 9, after confirming once again that the ICE locator showed that Mr. Khalil remained in New York City, they filed the petition in the S.D.N.Y. Am. Pet. ¶ 54; *see* Pet. (ECF 2). The petition sought, in addition to his release, to enjoin his transfer outside that district. Pet. at 10–11. But at the time the petition was filed, Mr. Khalil had already been at EDC for roughly 80 minutes. Second Suppl. Joyce Decl. ¶¶ 16–17 (ECF 72). And by the time, later that morning, the ICE locator finally updated to reflect Mr. Khalil's presence in New Jersey, he was already gone—shackled, in a van, on his way to JFK Airport. Am. Pet. ¶¶ 55, 63; Khalil Decl. ¶¶ 20–21.

That afternoon, Mr. Khalil's counsel learned that the government was transferring Mr. Khalil to its New Orleans Field Office, almost 1500 miles away. Am. Pet. ¶ 56. And the following morning, almost 40 hours after his arrest, Mr. Khalil arrived at an ICE detention facility in Jena, Louisiana, where he remains today. *Id.* ¶¶ 67, 70, 99.

## PROCEDURAL HISTORY

After Mr. Khalil's petition was filed in the S.D.N.Y., it was assigned to Judge Jesse M. Furman, who swiftly ordered that Mr. Khalil not be removed from the United States. ECF 9. Over the next week, the parties filed various motions. The government filed a motion to dismiss the petition for lack of habeas jurisdiction or to transfer it to Louisiana. ECF 30. And Mr. Khalil filed an amended petition alleging violations of the First and Fifth Amendments and the Administrative Procedure Act, ECF 38; a motion under the All Writs Act, 28 U.S.C. § 1651, seeking his return to New York, ECF 11; a motion for release on bail during the pendency of his habeas action, ECF 53; and a motion for a preliminary injunction also seeking his release, ECF 66. On March 19, the Court denied the government's motion to dismiss, but granted its motion to transfer—"albeit to the District of New Jersey, not to the Western

District of Louisiana." *Khalil S.D.N.Y.*, 2025 WL 849803, at *14. The court also transferred Mr. Khalil's pending motions to the new district court. *Id.*

Upon transfer to New Jersey, the case was assigned to Judge Michael E. Farbiarz, who quickly renewed Judge Furman's order prohibiting Mr. Khalil's removal from the country, ECF 81, and set a schedule for additional briefing on the pending motions to account for the change in circuits, ECF 85. Over the next two weeks, the parties exchanged briefs on the government's renewed motion to dismiss or transfer to Louisiana, ECF 90, 107, 130; and Mr. Khalil's motions for return, ECF 96–97, release on bail, ECF 93, 99, 108, and a preliminary injunction, ECF 124, 156, 175. Amidst that briefing, on March 28, the Court held argument on the government's motion to dismiss. And, in the April 1 opinion of which the government here seeks early review, the court denied that motion. Add.4–70.[5]

The court's opinion is lengthy, but its thorough analysis in support of its conclusion that it has habeas jurisdiction over Mr. Khalil's petition is straightforward.[6]

---

[5] On April 20, in a text order, the district court denied Mr. Khalil's emergency motion to expedite consideration of his bail motion in light of the impending birth of Mr. Khalil's child. ECF 206. His bail motion remains pending. ECF 53.

[6] A substantial portion of the opinion rejected Mr. Khalil's argument that

The court relied on the plain text of 28 U.S.C. § 1631, a federal transfer statute on the books since 1982, and Supreme Court precedent to find that transfer of the petition from the S.D.N.Y. to the D.N.J. was proper. Add.28–38. That statute provides:

> Whenever a civil action is filed in a court . . . and that court finds that there is a want of jurisdiction, the court shall, if it is in the interest of justice, transfer such action . . . to any other such court . . . in which the action . . . could have been brought at the time it was filed . . . , and the action . . . shall proceed as if it had been filed in . . . the court to which it is transferred on the date upon which it was actually filed in . . . the court from which it is transferred.

28 U.S.C. § 1631. Because Mr. Khalil was in New Jersey when his petition was filed, it "could have been brought" there, and because Judge Furman had concluded "that transfer was in the interest of justice," that transfer was mandatory. Add.32 & n.19 (citing *Khalil S.D.N.Y.*, 2025 WL 849803, at *14). The "[b]ottom line," the court explained, was that "Section 1631 means that the Petition here is

---

Judge Furman's decision to transfer the petition to the District of New Jersey was binding under the law of the case doctrine. Add.11–27. In any eventual appeal, this Court could affirm on that basis. ECF 107 at 7–12.

Related, believing that the matter was closed under the law of the case, Mr. Khalil filed a pro forma cross-motion for re-transfer to the S.D.N.Y. to preserve that issue. ECF 106; ECF 107 at 30. That motion, which the district court denied, Add.14, would also be reviewable on appeal.

treated . . . as if it was filed on March 9" in New Jersey. Add.37. That, in turn, meant that "the Petition counts as having been filed in New Jersey at the same moment the Petitioner was" also in New Jersey. Add.29. And that, in turn, satisfies the "default rule" for habeas jurisdiction. *Rumsfeld v. Padilla*, 542 U.S. 426, 435–36, 443–44 (2004); *see* Add.24.[7]

The bulk of the court's opinion addressed various potential objections to this conclusion, most of which the court raised itself, rather than at the government's behest. And, while relying on consensus precedent from this and other circuits as well as the Supreme Court, it rejected them all.

First, Judge Farbiarz explained that he could rely on section 1631 even though Judge Furman had relied on a different federal transfer statute (28 U.S.C. § 1406(a)). Add.30–31 (citing multiple precedents from this Court and unanimous law in other circuits); that section 1631 applies to habeas petitions, Add.31–32 (same); that section 1631 can cure defects in personal

---

[7] As the court explained, and as the government has not contested, "habeas jurisdiction" is not equivalent to subject matter jurisdiction. Add.15 n.12; *see Padilla*, 542 U.S. at 434 n.7; *Padilla*, 542 U.S. at 451 (Kennedy, J., concurring); *Khalil S.D.N.Y.*, 2025 WL 849803, at *11.

jurisdiction, Add.32–36 (same); and that this Court had similarly applied section 1631 in various other cases, Add.36–38.

Second, the court explained that the fact that Mr. Khalil is presently in Louisiana, instead of New Jersey, does not defeat habeas jurisdiction based on the rule of *Ex parte Endo*, 323 U.S. 283 (1944). Add.39–45. The "*Endo* Rule*," still unquestioned by any court for more than eighty years, is "that a habeas court that otherwise has jurisdiction over a case does not lose that jurisdiction just because the habeas petitioner has been moved out of the district." Add.39. The court pointed to *Padilla*, two major cases from this Circuit, and many others from district courts within it, to definitively conclude that "the *Endo* Rule is the law—and under [it], this Court retains the jurisdiction it had over this case . . . even though the Petitioner is now in Louisiana." Add.45; *see* Add.43–44 (citing, *inter alia*, *Anariba v. Dir. Hudson Cnty. Corr. Ctr.*, 17 F.4th 434 (3d Cir. 2021); *Ex parte Catanzaro*, 138 F.2d 100 (3d Cir. 1943)).

Third, the court explained that the fact that Mr. Khalil's petition did not name his *current* immediate custodian in Louisiana does not defeat habeas jurisdiction because "one of the warden's senior supervisors is named—and

that is what is needed under the Supreme Court's decisions in *Padilla* and *Endo*." Add.49.

And fourth, the court explained that the fact that Mr. Khalil's petition did not name his *original* immediate custodian in New Jersey does not defeat habeas jurisdiction under "the unknown custodian exception to the immediate custodian rule." Add.50; *see* Add.54 (explaining that the unknown custodian exception is the "law of the land" under *Padilla*); Add.55–56 (citing cases and leading habeas treatises). "[W]hen, on the facts of a given case, the immediate custodian simply cannot be known," Add.54, that exception "permit[s]" a habeas petitioner "to name not his immediate custodian, as is normally required, but his 'ultimate' custodian," Add.57 (citing, *inter alia*, *Demjanjuk v. Meese*, 784 F.2d 1114 (D.C. Cir. 1986), which originated the exception). "And that is what the Petitioner did here." Add.57. The court also granted Mr. Khalil leave to add the EDC warden to his petition, Add.59 n.32, which he has now done, ECF 162.

After the parties submitted letter briefing on section 1292(b), Add.73–79, the court certified this petition, Add.1–3. In its certification order, the court made clear that it "would not expect to stay the proceedings" in the district court pending any interlocutory appeal in this Court. Add.3.

## <u>REASONS WHY THE PETITION SHOULD BE DENIED</u>

The basic policy of the courts, since "the beginnings of the federal judicial system," has been to postpone appellate review until after the entry of final judgment. *Bachowski v. Usery*, 545 F.2d 363, 367 (3d Cir. 1976). The "final judgment rule," 28 U.S.C. § 1291, serves three critical interests: it discourages inefficient, piecemeal litigation; it protects appellate dockets from unnecessary pressure; and it maintains the independence of the trial courts. *Mohawk Indus., Inc. v. Carpenter*, 558 U.S. 100, 106–07 (2009). Section 1292(b) is a narrow exception to that rule, giving this Court discretion to accept interlocutory appeals that involve (1) "a controlling question of law" (2) "as to which there is substantial ground for difference of opinion" (3) where "an immediate appeal from the order may materially advance the ultimate termination of the litigation." The exception is intended to be "sparingly applied" in rare "cases where an intermediate appeal may avoid protracted and expensive litigation," but it "is not intended to open the floodgates to a vast number of appeals from interlocutory orders in ordinary litigation." *Milbert v. Bison Lab'ys, Inc.*, 260 F.2d 431, 433 (3d Cir. 1958).

In seeking immediate review of the Court's order denying its motion to dismiss or transfer, the government bears the burden of demonstrating each

of section 1292(b)'s three requirements. *See, e.g.*, *Maxlite, Inc. v. ATG Elecs., Inc.*, 2017 WL 215970, at *2 (D.N.J. Jan. 17, 2017). Here, it cannot meet this demanding standard. And even if it could, the Court should exercise its total discretion under the statute to deny its request. *See Katz v. Carte Blanche Corp.*, 496 F.2d 747, 754 (3d Cir. 1974) ("[L]eave to appeal may be denied for entirely unrelated reasons such as the state of the appellate docket or the desire to have a full record before considering the disputed legal issue."); *Bachowski*, 545 F.2d at 368.

Mr. Khalil does not dispute that the Court's order "involves a controlling question of law." 28 U.S.C. § 1292(b). However, the government has not come close to demonstrating that the law upon which the Court's order relies presents a "substantial ground for difference of opinion." *Id.* Nor has the government shown that the circumstances merit interrupting the course of the litigation at this advanced juncture of the case and burdening this Court with a piecemeal appeal. *Id.*

I.  **The government identifies no "substantial ground for difference of opinion" on the district court's habeas jurisdiction.**

To reach its conclusion, the district court applied the plain text of a federal transfer statute (28 U.S.C. § 1631), the clear legal rule concerning

habeas jurisdiction (the district of confinement rule, *Padilla*, 542 U.S. at 435 (majority op.)), and longstanding precedent regarding the movement of habeas petitioners (*Endo*, 323 U.S. 283). Of course, the court applied those established legal rules to a unique set of facts. But where "[t]he law is well settled," "differences of opinion with respect to how the law should be applied to the facts of the case" do not support certification. *Fechter v. Connecticut Gen. Life Ins. Co.*, 800 F. Supp. 178, 181 (E.D. Pa. 1991). Instead, "[s]ubstantial grounds for difference of opinion exist when there is genuine doubt or conflicting precedent as to the correct legal standard applied in the orders at issue." *Bush v. Adams*, 629 F. Supp. 2d 468, 475 (E.D. Pa. 2009); *see Couch v. Telescope Inc.*, 611 F.3d 629, 633 (9th Cir. 2010). Accordingly, "just because a court is the first to rule on a particular question" does not mean the standard is met. 2 Fed. Proc., L. Ed. § 3:217; *see* 16 Wright & Miller, Fed. Prac. & Proc. Juris. § 3930 & n.12 (3d ed.).

The government fails to identify a substantial ground to doubt the district court's conclusions. And since Judge Farbiarz ruled, two other courts have followed his analysis, again rejecting all the government's positions. *Ozturk Vt.*, 2025 WL 1145250, at *5–*10; *Ozturk Mass.*, 2025 WL 1009445, at *4–11. That makes four district courts in the past month that have landed

in the same place—even though "certain issues . . . ha[d] not been directly discussed by" this or any other Court of Appeals. Add.2. This is hardly the stuff of "substantial ground for difference of opinion." 28 U.S.C. § 1292(b).

First, the government argues (for the first time in this litigation) that courts cannot use section 1631 to transfer habeas cases because they are not, under the meaning of the statute, "civil actions." Gov't Pet. 18–20. That argument is forfeited.[8] But in any event, whether or not the term "civil action" includes habeas actions in *other* statutory contexts, it clearly does in this one. This Court has "repeatedly recognized that Section 1631 applies to habeas petitions," Add.28 (citing, *inter alia*, *Robinson v. Johnson*, 313 F.3d 128, 139 (3d Cir. 2002))—as has every other circuit to address the question.[9] What the government offers as a "substantial ground" is, instead, foreclosed by binding precedent.

---

[8] *See Singleton v. Wulff*, 428 U.S. 106, 120 (1976) ("It is the general rule, of course, that a federal appellate court does not consider an issue not passed upon below."); *Barna v. Bd. of Sch. Dirs.*, 877 F.3d 136, 147 (3d Cir. 2017).

[9] *See, e.g.*, *Liriano v. United States*, 95 F.3d 119, 123 (2d Cir. 1996); *Dragenice v. Ridge*, 389 F.3d 92, 97 (4th Cir. 2004); *Storey v. Lumpkin*, 8 F.4th 382, 390 (5th Cir. 2021); *Roman v. Ashcroft*, 340 F.3d 314, 328 (6th Cir. 2003); *Phillips v. Seiter*, 173 F.3d 609, 610 (7th Cir. 1999); *Cruz-Aguilera v. INS*, 245 F.3d 1070, 1074 (9th Cir. 2001); *Schell v. Vaughn*, 549 F. App'x 788, 790 (10th Cir. 2013); *Partee v. Att'y Gen.*, 451 F. App'x 856, 858 (11th Cir. 2012); *Christian v. Hawk*, 923 F.2d 200 (D.C. Cir. 1990).

Second, the government argues that the district court's reliance on section 1631 allowed it "to acquire substantive authority that the court would otherwise lack." Gov't Pet. 12.[10] But this Court's repeated use of the statute in habeas cases rejects that position, and the argument misunderstands the nature of the question before the district court. The district court did not use the transfer statute to remedy an absence of subject matter jurisdiction, which "[n]o one doubts" in this case. Add.15 n.12. Lacking that argument, the government casts *Padilla*'s "default rule[s]"—that, in habeas cases, petitioners must sue their immediate custodian in the district of their confinement at the time of filing, 542 U.S. at 435–36, 443–44—as "preconditions" that amount to "statutory requirements" for relief under the habeas statute, 28 U.S.C. § 2241. Gov't Pet. 12 (also calling the *Padilla* rules "specific statutory perquisites [sic]" for the habeas remedy). But they are not. And, in fact, the pleading provision of the statute expressly permits *not* naming an immediate

---

[10] The cases the government highlights in this context could not have been brought in other courts, as section 1631 requires. *See Campbell v. Off. of Pers. Mgmt.*, 694 F.2d 305, 306, 309 n.6 (3d Cir. 1982) (rejecting transfer to newly created federal court that *did not exist* at original time of filing because decision at issue was "not subject to review" by *any* court, *anywhere*); *Monteiro v. Att'y Gen. of U.S.*, 261 F. App'x 368, 369 (3d Cir. 2008) (untimely).

custodian when that custodian is unknown. 28 U.S.C. § 2242; Add.58. Plus, as the government acknowledges, there are multiple exceptions to those judge-made default rules, Gov't Pet. 15–20, which could not be true if the rules were strict and essential requirements to obtain a habeas remedy.

Third, the government disputes the district court's understanding of *Endo*, calling "dispositive" the *Padilla* Court's use of the words "*properly* filed" while it was describing the facts in that case. Gov't Pet. 15. Those words, the government says, mean that *Endo* only protects habeas petitioners where there is a court that "can *retain* jurisdiction" that "*originally vested*." *Id.* Not only does *Padilla* say no such thing, but as the district court made clear, this simplistic argument ignores the clear text of section 1631, which requires that a transferred case "proceed *as if it had been filed*" in the transferee court at the time of original filing. 28 U.S.C. § 1631 (emphasis added); *see* Add.28–29; *Ozturk Vt.*, 2025 WL 1145250, at *5–6; *Ozturk Mass.*, 2025 WL 1009445, at *11. Congress wrote this rule in clear terms. *Lafferty v. St. Riel*, 495 F.3d 72, 82 (3d Cir. 2007). For every relevant purpose, Mr. Khalil's petition *was* filed in New Jersey while he was detained there, and *Endo* protects him on that basis. Add.29; Add.37.

Fourth, in six weeks of litigation in five different courts, the government has not even attempted to square its dim reading of *Endo* with the fundamental purpose of the *Endo* Rule to safeguard the Great Writ. The government concedes that *Endo* means that it cannot defeat jurisdiction and unilaterally choose a new venue by moving a habeas petitioner who has "properly filed" a petition—yet *Endo* has nothing to say about its ability to move a petitioner in a way that (intentionally or not) prevents any "proper filing" in the first place. But the government's view of *Endo*, which is bedrock habeas law, *Anariba*, 17 F.4th at 445–46; *Catanzaro*, 138 F.2d at 101 (adopting the rule a year before *Endo*), would eat the longstanding rule alive. As the Supreme Court has instructed, habeas corpus "must not be subject to manipulation by those whose power it is designed to restrain." *Boumediene v. Bush*, 553 U.S. 723, 765–66 (2008). And, the Court held in *Endo* itself, the "objective" of habeas relief] "may be *in no way* impaired or defeated by the removal of the prisoner from the territorial jurisdiction of the District Court." 323 U.S. at 307 (emphasis added); *see Anariba*, 17 F.4th at 447 (*Endo* does not allow the government to "willingly transfer an ICE detainee seeking habeas relief from continued detention to a jurisdiction that is more amenable to the Government's position, or . . . transfer an ICE detainee for the purpose

of intentionally introducing complicated jurisdictional defects to delay the merits review of already lengthy § 2241 claims"). Here, the government's argument means that if the Court dismissed Mr. Khalil's petition, the government could move him *yet again*, and again, until his lawyers finally catch up. That is antithetical to *Endo*'s very purpose.

Fifth and finally, the government contends that the district court misapplied the unknown custodian exception. Gov't Pet. 17–18. This Court would not even need to review the district court's unknown custodian analysis because the court also granted Mr. Khalil leave to amend his petition to add the EDC warden. Add.59 n.32; *see Ozturk Vt.*, 2025 WL 1145250, at *10. Mr. Khalil did so, ECF 162, and that amendment "relates back" to the original date of the filing of the petition. Fed. R. Civ. P. 15(c)(1)(C)(1)–(2).

But even without the amendment, the exception fits this case to a tee. Add.57. And the government's arguments about the unknown custodian exception—which the government does not dispute is "a basic part of our law," Add.55—are not just wrong,[11] but intolerable. The government says the

---

[11] Grasping at straws, the government argues that the unknown custodian exception does not apply because Mr. Khalil's custodian "*was* knowable," since his NTA "lists Jena, Louisiana [as] where he would be detained." Gov't Pet. 18 (emphasis added). But Mr. Khalil's lawyers did not have the NTA when they filed the petition, and he was not permitted to speak with them

exception only "applies . . . where one's detention is a prolonged secret[,] . . . not where counsel is unable to track down the proper custodian for a brief period of time." Gov't Pet. 17. But the government offers no support for its time-based limitation on the exception, which is based in equity, fairness, and the necessary availability of the Great Writ—the most "adaptable" remedy in American law, *Boumediene*, 553 U.S. at 779. Even worse, the government's suggestion that the "exception cannot be read to . . . snap into effect the minute counsel wishes to file, and is unable to track down the petitioner's exact whereabouts on moment's notice," Gov't Pet. 18, amounts to the chilling suggestion that the ancient right of habeas corpus does not apply for some government-controlled period after the government effectuates a person's incommunicado detention. Thankfully, the Founders wrote the Suspension Clause. *See Boumediene*, 553 U.S. at 765 (the executive lacks "the power to switch the Constitution on or off at will").

It is with that Clause in mind, Add.67 n.37, that Judge Farbiarz laid out the clear and disturbing implications of the government's position:

---

when ICE agents presented it to him. Am. Pet. ¶¶ 59–60. Regardless, neither *Padilla* nor the government's own version of it would allow a habeas petitioner's lawyers to sue his *potential future* custodian in *Louisiana* when he is *in fact* being held by a *different* custodian in *New Jersey*.

that, as of March 9, the Petitioner, detained in the United States, would not have been able to call on any habeas court. Not in Louisiana, New York, or New Jersey. And not anywhere else, either.

That is too far. Our tradition is that there is no gap in the fabric of habeas—no place, no moment, where a person held in custody in the United States cannot call on a court to hear his case and decide it.

Add.68–69 (citing Blackstone, *Boumediene*, and Justice Story's *Commentaries*).

The government's appeal is baseless, and this Court should not entertain it now.

## II. An interlocutory appeal will not materially advance the ultimate termination of the litigation or serve the purposes of section 1292(b)'s exception to the final judgment rule.

That this Court has allowed some interlocutory appeals "regarding jurisdictional issues" in the past, Gov't Pet. 9 (citing cases involving *subject matter* jurisdiction), has little to say about whether it should do so here. And in the end, the district court's opinion does not "truly implicate[] the policies favoring interlocutory appeal." *Katz*, 496 F.2d at 756.

Moreover, while a successful appeal would end Mr. Khalil's habeas litigation in New Jersey, the government's alternative request for transfer to Louisiana means the litigation might simply continue, yet again, in a new

venue. *See, e.g.*, *Sun Life Assurance Co. of Canada v. Wells Fargo Bank, N.A.*, 21-cv-9959, 2023 WL 3309355, at *5 (D.N.J. May 8, 2023) (certification inappropriate where parties would end up engaging in the "same litigation elsewhere").

And even if an appeal might somehow lead to dismissal, most of the litigation costs in this case are already sunk. *See Discretionary Appeals of District Court Interlocutory Orders*, 69 Yale L.J. 333, 343 (1959) (whether 1292(b) appeal involves "material" savings depends on "the stage [of] the proceedings"); *FTC v. Wyndham Worldwide Corp.*, 10 F. Supp. 3d 602, 635 (D.N.J. 2014), *aff'd* 799 F.3d 236 (3d Cir. 2015). Where there is "no reason to believe" that continued litigation "will be either protracted or exceptionally costly," then "the savings that would result from the possible avoidance of" unnecessary litigation do not "warrant allowance of an immediate appeal." *Mazzella v. Stineman*, 472 F. Supp. 432, 436 (E.D. Pa. 1979).

Here, three substantial motions—on Mr. Khalil's return to New Jersey, release on bail, and the merits of his constitutional claims—are fully briefed, and the government has not sought to stay the litigation, Gov't Pet. 9 n.2; Add.3. Even without a stay, certification would only "tend[] to delay" this case rather than hasten its end, *Ahrenholz v. B. of Trs. of Univ. of Ill.*, 219 F.3d

674, 675 (7th Cir. 2000), "compound[ing] the harm" that Mr. Khalil "suffer[s] each day," *Cobell v. Norton*, 226 F. Supp. 2d 1, 160 (D.D.C. 2002), *rev'd on other grounds*, 334 F.3d 1128 (D.C. Cir. 2003), and would lead to the kind of "piecemeal appellate litigation" that Congress has long sought to prohibit, *Bachowski*, 545 F.2d at 371.

## CONCLUSION

The Court should deny the petition for interlocutory review.

Dated: April 22, 2025

/s/ Brett Max Kaufman

AMERICAN CIVIL LIBERTIES UNION OF
NEW JERSEY FOUNDATION
Jeanne LoCicero
Farrin R. Anello
Molly K.C. Linhorst
Liza Weisberg
570 Broad Street, 11th Floor
Newark, New Jersey 07102
Tel: (973) 854-1715

NEW YORK CIVIL LIBERTIES UNION
FOUNDATION
Amy Belsher
Robert Hodgson
Veronica Salama
Molly Biklen
125 Broad Street, 19th Floor
New York, N.Y. 10004
Tel: (212) 607-3300

CENTER FOR CONSTITUTIONAL RIGHTS
Baher Azmy
Samah Sisay
Diala Shamas
666 Broadway, 7th Floor
New York, NY 10012
Tel: (212) 614-6464

CLEAR PROJECT
MAIN STREET LEGAL SERVICES, INC.
Ramzi Kassem
Naz Ahmad
Mudassar Hayat Toppa
Shezza Abboushi Dallal
CUNY School of Law
2 Court Square
Long Island City, NY 11101
Tel: (718) 340-4558

American Civil Liberties Union Foundation
Omar Jadwat
Noor Zafar
Sidra Mahfooz
Brian Hauss
Esha Bhandari
Vera Eidelman
Tyler Takemoto
Brett Max Kaufman
125 Broad Street, 18th Floor
New York, NY 10004
Tel: (212) 549-2500

Washington Square Legal Services, Inc.
Alina Das
Immigrant Rights Clinic
245 Sullivan Street, 5th Floor
New York, New York 10012
Tel: (212) 998-6430

Dratel & Lewis
Amy E. Greer
29 Broadway, Suite 1412
New York, NY 10006
Tel: (212) 732-8805

Van Der Hout LLP
Marc Van Der Hout
Johnny Sinodis
Oona Cahill
360 Post St., Suite 800
San Francisco, CA 94108
Tel: (415) 981-3000

*Counsel for Petitioner–Appellee*

## CERTIFICATE OF BAR MEMBERSHIP

Pursuant to Local Rules 28.3(d) and 46.1(e), I certify that I am admitted as an attorney and counselor of the United States Court of Appeals for the Third Circuit.

/s/ Brett Max Kaufman
Brett Max Kaufman
*Counsel for Petitioner–Appellee*

## CERTIFICATE OF SERVICE

I hereby certify that on April 22, 2025, I electronically filed the foregoing document with the Clerk of the United States Court of Appeals for the Third Circuit by using the CM/ECF system. Counsel in this case are registered CM/ECF users and service will be accomplished by the CM/ECF system.

/s/ Brett Max Kaufman
Brett Max Kaufman
*Counsel for Petitioner–Appellee*

## CERTIFICATE OF COMPLIANCE

I hereby certify that the foregoing brief complies with the type-volume limitation of Federal Rule of Appellate Procedure 5(c) because it contains 5,185 words, and complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32 because it has been prepared in a proportionally spaced typeface using Microsoft Word 14-point Charter typeface.

*/s/ Brett Max Kaufman*
Brett Max Kaufman
*Counsel for Petitioner–Appellee*